RENDELL, Circuit Judge,
concurring.
RENDELL, Circuit Judge.
I join in our opinion and judgment but write separately to register my view that, having found that the assessments do not pass muster under the Supreme Court’s analysis in United Foods, and, having noted at the end of Pat IV that the compelled subsidies were assessed to support a program whose principal object was speech itself, we need not engage in the exercise of determining the “standard” regarding the extent of the government’s interest for purposes of a commercial speech analysis under Central Hudson, as the opinion does at Part VI-A. Twice — in both Glickman and United Foods — the Supreme Court has questioned the need for engaging in a Central Hudson analysis.[14] And, I think it unnecessary to apply Central Hudson in light of the Court’s analysis in United Foods.[15]
*281 In United Foods ■ the Court distinguished the situation it faced from the one it considered in Glickman by examining the following question: Is the challenged assessment part of a “broader regulatory system” that does not have speech as its primary object. 533 U.S. at 415, 121 S.Ct. 2334. There appear to be two parts to this basic inquiry. First, are the plaintiffs part of a group that is “bound together and required ... to market their products according to cooperative rules?” Id. at 412, 121 S.Ct. 2334. Second, is the assessment regulation related to and in furtherance of other non-speech purposes, carrying out other aspects to further other economic, societal, or governmental goals? Id. at 415, 121 S.Ct. 2834. Even if the answer to the first question is “no,” the assessment might nonetheless be permitted if it is not only related to speech. This second inquiry could signal consideration of “germaneness” if, in fact, other goals were implicated. But here, we answered “no” to both questions: we decided that the Cochrans did not surrender their freedom to make independent competitive choices to any collective enterprise, and we concluded that speech was the only purpose of the Dairy Act. Thus, it was purely “compelled speech,” forbidden by United Foods under any level of scrutiny. 533 U.S. at 410, 121 S.Ct. 2334. In fact, after discussing the various standards potentially applicable here, Judge Aldisert clearly states in the ensuing Part YI-B that under any level of scrutiny, the assessments for speech only do not pass constitutional muster given United Foods. The analysis in Part VI-A regarding the proper level of scrutiny is therefore unnecessary, and, I believe, dicta.

. The Court has not treated these cases as involving a discrete commercial speech issue, instead indicating that ''[t]he question is whether the government may underwrite and sponsor speech with a certain viewpoint using special subsidies exacted from a designated class of persons, some of whom object to the idea being advanced.” United Foods, 533 U.S. at 410, 121 S.Ct. 2334; see also id. (stating that, even if commercial speech is less protected than other speech, there is "no basis under either Glickman or our other precedents to sustain the compelled assessments,” but refusing to consider "whether the Government's interest could be considered substantial for purposes of the Central Hudson test”); Glickman, 521 U.S. at 474 & n. 18, 117 S.Ct. 2130 (noting that it was "error for the [Ninth Circuit] to rely on Central Hudson for the purpose of testing the constitutionality of market order assessments for promotional advertising,” and stating that the Ninth Circuit "fails to explain why the Central Hudson test, which involved a restriction on commercial speech, should govern a case involving the compelled funding of speech”). In fact, in United Foods the Court appears to explicitly endorse the applicability of the Abood /Keller germaneness test: "It is true that the party who protests the assessment here is required simply to support speech by others, not to utter the speech itself. We conclude, however, that the mandated support is contrary to the First Amendment principles set forth in cases involving expression by groups which include persons who object to the speech, but who, nevertheless, must remain members of the group by law or necessity.” 533 U.S. at 413, 121 S.Ct. 2334 (citing Abood and Keller).

. The Sixth Circuit, in Michigan Pork Producers Ass’n, Inc. v. Veneman, 348 F.3d 157 (6th Cir.2003), also rejected the application of the Central Hudson test to an assessment created by a similar promotional program. I find that court's comments on this matter to *281 be instructive: "[W]e find inapplicable to this case the relaxed scrutiny of commercial speech analysis provided for by Central Hudson, and relied upon by Appellants. The Pork Act does not directly limit the ability of pork producers to express a message; it compels them to express a message with which they do not agree. Even assuming that the advertising funded by the Act is indeed commercial speech, the more lenient standard of review applied to limits on commercial speech has never been applied to speech — commercial or otherwise — that is compelled. It is one thing to force someone to close her mouth; it is quite another to force her to become a mouthpiece.” Id. at 163 (citation omitted).